# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRIMED, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 18-666-MN |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| ARTHREX, INC., | ) | **REDACTED-** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

## DEFENDANT'S JANUARY 6, 2020 LETTER
## TO THE HONORABLE MARYELLEN NOREIKA

OF COUNSEL :

Megan S. Woodworth
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4000

Robert E. Bugg
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
(212) 370-6241

Kelly E. Farnan (#4395)
Renée M. Mosley (#6442)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
mosley@rlf.com

*Attorneys for Defendant Arthrex, Inc.*

Dated: January 6, 2020



Kelly E. Farnan
302-651-7705
Farnan@rlf.com

January 6, 2020

**BY CM/ECF & HAND DELIVERY**

**CONFIDENTIAL
FILED UNDER SEAL**

The Honorable Maryellen Noreika
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

      RE:    *TriMed, Inc. v. Arthrex, Inc.*, C.A. No. 18-666-MN

Dear Judge Noreika:

TriMed's '822 patent claims the combination of a particular bone hook plate with a double-barreled drill guide.  Arthrex has provided the requested sales and financial information for the only accused products in the case—Volar Hook Plates and associated drill guide.[1] ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊  The present dispute involves TriMed's attempt to inflate the potential damages to dozens of unaccused, admittedly non-infringing products that have nothing to do with the '822 patent.  The law prohibits TriMed's improper damages theory, and numerous cases confirm that the Court should not compel Arthrex to provide financial information for these unaccused, irrelevant products.

As the party moving to compel additional discovery, TriMed bears the burden of demonstrating that the information it seeks is relevant and proportional to the needs of the case.  TriMed's letter, which relies primarily on one inapposite case and does not address the relevant cases denying similar discovery, fails to meet its burden.  TriMed's request should be denied.

TriMed's request for discovery on unaccused products is premised on its theory that Arthrex offers to sell the '822 patented invention every time that a surgeon uses any of the dozens of bone plates in Arthrex's Wrist Fixation System.  The "Wrist Plating System" is a marketing term describing a kit with several trays that include more than 30 different bone plates, a variety of screw fixation options, aiming guides, and instrumentation that a surgeon may use during surgery.  The Volar Hook Plates are 2 of the 30 plates that are used for fractures that occur very distally on the radius.  The other bone plates, as well as most of the screws and instrumentation that may be presented in this kit have nothing to do with the '822 patent and are primarily used for different indications.  The Wrist Plating System is a convenient way of maintaining and presenting fixation options.  The System (and all backup inventory) is provided to a medical center on consignment, with the center only paying for the bone plates or accessories that are actually used in surgery.  Aiming and drill guides are often provided to a medical center without charge, and are, in any instance, reusable—the center resterilizes a guide without paying anything for its repeated use.

---

[1] Even the accused Volar Hook Plates do not infringe the '822 patent as a matter of law. D.I. 70.

The Honorable Maryellen Noreika
Page 2
January 6, 2020

***The Law Does Not Permit Extension of Damages to Unrelated Products***. The law is clear: "To be admissible," a damages theory "must carefully tie proof of damages to the claimed invention's footprint in the market." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011). Put simply, the law does not permit extending damages to products that are unrelated to the patented invention. For this reason, this Court previously denied a motion (just like TriMed's) seeking discovery on unaccused products as irrelevant. *Waters Corp. v. Agilent Techns. Inc.*, 1-18-cv-01450-MN, D.I. 85 (D. Del., Jul. 3, 2019) ("Plaintiffs' request for production of documents on unaccused instruments is Denied" where plaintiff failed to show that accused product and unaccused product constituted a "functional unit.").

This Court's decision is in line with several other courts that have likewise denied financial discovery on unaccused products. *Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601, 2015 WL 2357685, at *4 (N.D. Cal. May 15, 2015) (denying motion to compel financial data on unaccused products where plaintiff failed to "articulate a theory as to how the sales of the particular products were connected to the sales of the infringing products"); *Cont'l Auto. Sys. US, Inc. v. Schrader Elecs., Inc.,* No. 11-14525, 2014 WL 12659421, at *2 (E.D. Mich. Oct. 8, 2014) (denying motion to compel financial information for devices sold bundled with but functionally separate from the accused device); *Bascom Global Internet Servs. Inc. v. AT&T Mobility LLC*, No. 3:14-cv-3942, D. I. 184 (N.D. Tex., Jul 31, 2017) (denying motion to compel financial data for unaccused products sold with the accused product as a matter of customer convenience); *Cedars Sinai Medical Center v. Quest Diagnostic Incorporated*, No. 17-cv-5169, D.I. 113 (C.D. Cal., Oct. 11, 2018) (denying motion to compel discovery of financial data for unaccused products sold at the same time as accused product where plaintiff failed to adequately articulate theory for damages based on convoyed sales); *RTC Indus., Inc. v. Fasteners for Retail, Inc*., No. 17-cv-3595, D.I. 313 (E.D. Ill., Nov. 26, 2019) ("RTC's request for production of all sales of any product sold to an FFR customer that purchased an Accused Product, without any regard as to whether the other products are functionally related to the Accused Products, far exceeds the scope of what is relevant under governing Federal Circuit law for convoyed sales….").

TriMed's only legal support for its "offer to sell" theory is *Stryker*—a case that addresses damages associated with the accused products, not unrelated products used for other purposes. In *Stryker,* the plaintiff accused a two-piece femoral prosthesis device referred to as the APRII. The APRII was manufactured, marketed, and sold as a two-piece device. One of the two components was a modular sleeve that met the claim limitation for a "distal tip" while the rest of the prosthesis constituted the claimed "stem." Depending on the patient and injury, however, the surgeon may not use the sleeve during surgery, but instead, use the prosthesis alone. The Court approved a damages award covering all sales of the accused device, even those where the prosthesis was used without the sleeve. This case is far from "exactly on point," as TriMed alleges. The permitted damages encompassed only the accused devices, although some uses by the customer were non-infringing.[2] Here, by contrast, TriMed seeks damages for unaccused devices that may be presented with the accused products for convenience. These unaccused bone plates are ***entirely separate***

---

[2] Notably, the Court specifically found that each instance of an APRII being used without a distal sleeve was a direct alternative to the plaintiff's own commercial embodiment of the patented device. That is not the case with TriMed's theory here.

The Honorable Maryellen Noreika
Page 3
January 6, 2020

*from and functionally unrelated to* the accused products. Unlike *Stryker*, TriMed's proposed damages go well beyond the accused device to encompass the purchase of unrelated non-infringing bone plates *instead of* the accused devices.

As legal support TriMed also mentions *Georgia-Pacific* factor six which relates to convoyed sales: "the effect of selling the infringing product in promoting sales of other non-patented products." But both derivative and convoyed sales require that the unaccused products be functionally associated with the accused product. *P & G Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547 (D. Del. 1997) ("'Convoyed' or 'derivative' sales occur where the sale of one thing is likely to cause the sale of another, such as selling a razor and then also being able to sell the blades to go with it."). Although convoyed sales may permit royalties for both patented and non-patented products of a single assembly, the Federal Circuit has been clear that liability does not extend "to include items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device *only as a matter of convenience or business advantage*." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) (emphasis added). That is precisely the situation here, as the unaccused bone plates function independently of the Volar Hook Plate and thus are not derivative or convoyed sales. *Immersion Corp. v. HTC Corp.*, 2015 U.S. Dist. LEXIS 21555 (D. Del. Feb. 24, 2015) ("If they can function independently, patented and unpatented products do not constitute a functional unit.").

Finally, there are a number of factual inaccuracies with TriMed's position. It is not true that the entire Wrist Fixation System is presented in every surgery. Rather, ███████████████████████████████████████ Ex. 1 (Choinski Dep.) at 66:2-20. In fact, the accused Volar Hook Plate is housed in a separate "fragment specific" tray that ███████████████████████ ███████████████████████████████████████ *Id.* at 64:3-66:12. Moreover, TriMed's suggestion that "but for" the infringement TriMed's wrist fixation system would have been in the operating room instead is belied by the fact that Arthrex sold its Wrist Fixation System for years before introduction of its volar hook plate,[3] and that ███████████████████████████████ ███████████████████████████████████ that TriMed ignores in its "but for" world. *See* Ex. 2 (D. Medoff Dep.) at 230-32.

Arthrex respectfully requests that TriMed's requests be denied.

Respectfully,

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)

---

[3] *James M. Nielsen, M.D. v. Alcon, Inc.*, No. 3:08-cv-2239, D.I. 144 (N.D. Tex., Sept. 10, 2010) (Denying motion to compel financial information for non-infringing products where plaintiff failed to establish a causal link between the sale of the accused and unaccused devices and where the unaccused products were successfully sold before the patented product was ever introduced).

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2020, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY E-MAIL**
Arthur G. Connolly, III
Ryan P. Newell
Connolly Gallagher LLP
1201 North Market Street
20th Floor
Wilmington, DE 19801

**BY E-MAIL**
Lee F. Grossman
Mark Grossman
Grossman Law Offices
225 West Washington Street
Suite 2200
Chicago, Il 60606

**BY E-MAIL**
Jeffrey M. Drake
Miller, Canfield, Paddock and Stone, P.L.C.
225 W. Washington Street
Suite 2600
Chicago, IL 60606

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com